**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

THOMAS R. RODELLA,

                Petitioner,

vs.                                          No. CIV 19-0275 JB\CG

UNITED STATES OF AMERICA,

                Respondent.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the oral motion for a Certificate of Appealability. <u>See</u> Transcript of Hearing at 4:25-5:2 (taken January 24, 2020), filed January 29, 2020 (Doc. 34)("Tr.")(Clouthier). The primary issue is whether the Court should grant Petitioner Thomas R. Rodella a Certificate of Appealability, because (i) Rodella has made a substantial showing that he has been denied a constitutional right; and (ii) there is a Court of Appeals split regarding a 28 U.S.C. § 2255 petitioner's burden of proof. The Court now determines that Rodella has not made a substantial showing that he has been denied a constitutional right. The Court, however, will grant a certificate of appealability, because there is a Court of Appeals split regarding a 28 U.S.C. § 2255 petitioner's burden of proof.

The Court held an evidentiary hearing on January 24, 2020. <u>See</u> Tr. at 1:11-13. The Court noted that it had issued a forty-nine-page opinion the previous night. <u>See</u> Tr. at 3:12-14 (Court). The Court stated that Rodella indicated that he wanted to address the certificate of appealability at the hearing. <u>See</u> Tr. at 4:1-3 (Court). Rodella said that he wanted to first address a case that the Court cited in its opinion, <u>United States v. Ramon-Silva</u>. <u>See</u> Tr. at 4:13-14 (Clouthier)(citing <u>United States v. Ramon-Silva</u>, 608 F.3d 663 (10th Cir. 2010)("<u>Ramon-Silva</u>")). Rodella said that

it "may or may not be the case" that Ramon-Silva was law at the time of the offense. Tr. at 4:14-15 (Clouthier). Rodella pointed out that Ramon-Silva involved aggravated assault, which requires higher proof "because the defendant had to threaten or engage in a menacing conduct towards the victim with a weapon producing death or great bodily harm." Tr. at 4:17-23 (Clouthier). Rodella emphasized that aggravated assault threatens violent force because "the aggressor communicates to his victim that he will potentially use violent force against the victim in the future." Tr. at 4:24-5:1 (Clouthier). Moreover, Rodella argued, the Ramon-Silva defendant "actually touched the victim with a weapon," which is more than "just brandishing a firearm." Tr. at 5:3-5 (Clouthier). Rodella concluded that Ramon-Silva is "different and distinguishable" from this case "and, therefore, not the law at the time of the offense." Tr. at 5:6-8 (Clouthier).

Rodella highlighted United States v. Verbickas, in which, like Rodella, the defendant was convicted under 18 U.S.C. § 242. See Tr. at 5:9-10 (Clouthier)(citing United States v. Verbickas, 75 F. App'x 705 (10th Cir. 2003)(unpublished)). Rodella emphasized that, although United States v. Verbickas concerned 18 U.S.C. § 242's bodily-injury clause, the case adopted the United States Court of Appeals for the Fifth Circuit's holding in United States v. Williams, 343 F.3d 423, 433 (5th Cir. 2003), which "stated that the use, attempted use, or threatened use of a dangerous weapon can create a substantial risk of physical force." Tr. at 5:14-17 (Clouthier). Rodella noted that "substantial risk falls under the residual clause." Tr. at 5:17-18 (Clouthier). Rodella said that the Court should apply the rule of lenity and determine that United States v. Verbickas was the "the rule at the time of the conviction," and, thus, the Court used the residual clause to sentence Rodella. Tr. at 5:19-23 (Clouthier). Rodella "underst[ood]" that the Court may not agree with Rodella, so Rodella asked the Court to grant a certificate of appealability to argue this issue at the United States Court of Appeals for the Tenth Circuit. Tr. at 5:24-6:1 (Clouthier).

Rodella further noted that the United States Courts of Appeals' split in the standard for deciding whether Rodella was sentenced under the residual clause is "ripe for consideration at the Supreme Court" of the United States of America.  Tr. at 6:3-8 (Clouthier).  Rodella summarized his arguments why the Court should grant the certificate of appealability: (i) the split among the Courts of Appeals regarding the standard (ii) that "maybe" "potentially different people would disagree"; and (iii) that the aggravated-assault case does not apply to a brandishing-firearm case. Tr. at 6:8-14 (Clouthier).  Rodella argued that, in United States v. Davis, 139 S. Ct. 2319 (2019), the Supreme Court was "super concerned" that brandishing a firearm, without more, is a crime of violence and that this issue is "the whole premise in which they found the residual clause unconstitutional."  Tr. at 6:15-21 (Clouthier).  Rodella explained that 18 U.S.C. § 242 says "use or attempted use of a firearm," is "not the same as threatening use" and is more similar to "possession of a weapon."  Tr. at 7:2-7 (Clouthier)(citing United States v. Ryle, 778 F. App'x 598 (10th Cir. 2019), in which the defendant "had the [firearm] on his hip and just tapped it").

The United States responded to Rodella's arguments.  See Tr. at 7:21 (Court).  The United States first countered Rodella's assertion that Ramon-Silva was not current law at the time of sentencing.  See Tr. at 7:24-8:1 (Pena).  The United States noted two other cases that it cited -- United States v. Kendall, 876 F.3d 1264, 1266 (10th Cir. 2017), cert. denied, 138 S. Ct. 1582 (2018), and United States v. Mitchell, 653 F. App'x 639, 645 (10th Cir. 2016)(unpublished). See Tr. at 8:1-2 (Pena).  The United States emphasizes that United States v. Kendall concluded that bodily injury or use of a deadly or dangerous weapon render the underlying an offense a crime of violence.  See Tr. at 8:7-10 (Pena).  Further, the United States argued, the Tenth Circuit held in United States v. Mitchell that an element of a dangerous or deadly weapon renders the underlying offense a crime of violence.  See Tr. at 8:10-13 (Pena).

The United States then countered Rodella's assertion that the analysis changes when the underlying offense is aggravated assault, because the use-of-a-dangerous-weapon requirement obligates the use to be connected to the underlying crime. <u>See</u> Tr. at 8:17-19. The United States then explained that, if the case were to proceed further, the jury instructions would provide the definition of the word "use." Tr. at 9:22-23 (Pena). Because 18 U.S.C. § 242 does not define "use," the United States argued that the common meaning of the word "use" would be used. Tr. at 8:24-9:1 (Pena). To undermine Rodella's argument that "use" of a dangerous weapon is similar to possession of a dangerous weapon, the United States pointed out that it is not "using [its] phone," which was in its pocket, because "use means to employ actively." Tr. at 9:2-5 (Pena). To buttress its definition of "use," the United States highlighted the 18 U.S.C. § 924(c), which defines use in a way "that requires active employment specifically." Tr. at 9:6-10 (Pena). The United States argued that a reasonable juror who reads the jury instructions as a whole "would understand that [active employment] is the Court's definition of use," which "would define the minimal culpable criminal conduct for them to convict at the 242 level, even in this case." Tr. at 9:11-16 (Pena). The United States affirmed its confidence in the Court's opinion. <u>See</u> Tr. at 10:7-15 (Court, Pena). When the Court asked the United States why it is "indifferent" on the certificate of appealability rather than in opposition to it, the United States explained that it hasn't "fleshed out the standard for the [Certificate of Appealability] at this time." Tr. at 10:16-23 (Court, Pena). The Court asked the United States whether the Court correctly stated it was denying the motion and dismissing the proceedings with prejudice, and the United States affirmed the Court and assured the Court that the United States would notify the Court if there is a problem with that language. <u>See</u> Tr. at 11:2-11 (Court, Pena).

Before Rodella made a final argument, the Court asked the United States if the jury

instructions that define use are Tenth Circuit pattern instructions, which the United States confirmed they are. See Tr. at 12:7-11 (Court, Pena). The United States clarified that the definition is in the 18 U.S.C. § 924(c) elements instruction, and not the 18 U.S.C. § 242 violation instructions. See Tr. at 12:11-14 (Pena). Rodella then argued that, in United States v. Davis, the Supreme Court used the word "use" when stating that the use of a firearm does not render an underlying crime a crime of violence. Tr. at 12:17-22 (Clouthier). Rodella added that "use" is not enough to be a crime of violence under current law and is "vague enough" to not be a crime of violence under the law at the time of sentencing. Tr. at 12:21-24 (Clouthier). Rodella then noted that he believes the cases cited by the United States were in 2016, after Rodella's sentencing. See Tr. at 12:24-13:1 (Clouthier). Rodella reiterated his request for a certificate of appealability, "especially on the issue of the circuit split on the burden of proof." Tr. at 13:2-9 (Clouthier).

## LAW REGARDING CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(1), "[u]nless a circuit justice or a judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . (B) the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1). The petitioner must make "a substantial showing of the denial of a constitutional right [to receive a certificate of appealability]." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability when the district court has rejected the petitioner's constitutional claims on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); Castillo v. Attorney Gen. of New Mexico, 325 F. Supp. 3d 1222, 1226 (D.N.M. 2018)(Browning, J.). To obtain a certificate of appealability when the district court has rejected the petitioner's constitutional claims on procedural grounds, the petition must show "at least, that jurists of reason

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. at 484.

## ANALYSIS

The Court grants Rodella's request for a certificate of appealability. The Court first concludes, however, that United States v. Ramon-Silva was law at the time of the offense, and that it was applicable to Rodella's brandishing-a-firearm case and second concludes that jurists of reason would not disagree with its resolution of Rodella's constitutional claims because "use" of a firearm is sufficient to render an offense a crime of violence under current law and under the law at the time of Rodella's sentencing. Although those two conclusions on their own would merit the Court denying the certificate of appealability, the Court also acknowledges a Court of Appeals split regarding the standard, which is an adequate basis for the case to proceed to the Tenth Circuit.

## I. THE COURT CORRECTLY RELIED UPON UNITED STATES V. RAMON-SILVA.

The Court concludes that United States v. Ramon-Silva was law at the time of the offense, and that it was applicable to Rodella's brandishing-a-firearm case. United States v. Ramon-Silva was decided in 2010 and was abrogated by Mathis v. United States, 136 S. Ct. 2243 (2016), in 2016. Rodella was sentenced in 2015, see Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody at 1, filed March 25, 2019 (Doc. 1), and, thus, United States v. Ramon-Silva was good law at the time of his sentencing.

Moreover, although the petitioner in United States v. Ramon-Silva committed a different underlying crime than Rodella committed, the case is still applicable to Rodella's case. Rodella argues that, in United States v. Ramon-Silva, the petitioner was convicted of aggravated assault,

which required the petitioner "to threaten or engage in a menacing conduct towards the victim with a weapon producing death or great bodily harm," Tr. at 4:19-22 (Clouthier), in contrast to Rodella's deprivation of civil rights conviction.  Moreover, Rodella argues, the Tenth Circuit concluded that aggravated assault "threatens violence force because by committing such an act aggressor communicates to his victim that he will potentially use violent  force against the victim."  Tr. at 4:22-6:1 (Clouthier).

Engaging in the categorical analysis, the Tenth Circuit compared the "scope of the conduct covered by the elements of the crime" with the statute's "definition of 'crime of violence.'"  United States v. O'Connor, 874 F.3d at 1151 (quoting U.S.S.G. § 4B1.2(a)).  In Ramon-Silva, the crime was aggravated assault under New Mexico state law, which the petitioner argued could be committed in two ways: (i) "by attempting a battery with a deadly weapon"; or (ii) "by 'engaging in conduct with a deadly weapon that causes the victim to believe he or she was about to receive a battery.'"  Ramon-Silva, 608 F.3d at 669 (citing Appellant's Brief at 54-55, Ramon-Silva; N.M. U.J.I. 14-304 to -306).  The Tenth Circuit focused its analysis on whether the second theory of aggravated assault, which it called "apprehension causing aggravated assault," had "as an element the use, attempted use, or threatened use of physical force."  Ramon-Silva, 608 F.3d at 669.  19-8007The Tenth Circuit thus compared the scope of "engaging in conduct with a deadly weapon that causes the victim to believe he or she was about to receive a battery," Ramon-Silva, 608 F.3d at 669 (internal citation omitted), with "the use, attempted use, or threatened use of physical force."[1]  18 U.S.C. § 924 (e)(2)(B)(i).  The Tenth Circuit concluded that apprehension causing

---

[1]The Supreme Court of the United States decided in Johnson v. United States, 559 U.S. 130 (2010), that the meaning of physical force under § 924(e)(2)(B)(i) was violent force.  Johnson v. United States, 559 U.S. at 140.

aggravated assault had "as an element the threatened use of 'force capable of causing physical pain or injury to another person.'" Ramon-Silva, 608 F.3d at 670. In making this determination, the Court applied Johnson v. United States, 559 U.S. 133 (2010), and found that the apprehension causing aggravated assault threatened the use of violent force, because (i) "by committing such an act, the aggressor communicates to his victim that he will potentially use '*violent* force' against the victim in the near-future"; and (ii) "the proscribed conduct always has the potential to lead to '*violent*' force." Ramon-Silva, 608 F.3d at 670 (quoting Johnson v. United States, 559 U.S. at 140 (emphasis in Johnson v. United States)).

In this case, the Court compared "the use, attempted use, or threatened use of a dangerous weapon," 18 U.S.C. § 242, with "the use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(c)(3)(A). To follow precisely the Tenth Circuit's analysis in Ramon-Silva, the Court applies Johnson v. United States and determines that the use, attempted, or threatened use of a dangerous weapon is the use, attempted use, or threatened use of physical force, because (i) by using, attempting to use, or threatening to use, a dangerous weapon, the defendant is not hiding a dangerous weapon away to avoid frightening the victim -- the defendant is communicating to the victim that he or she will potentially use that dangerous weapon, which is capable of violent force, against the victim in the near future; and (ii) the deployment, or threatened or attempted deployment, of a dangerous weapon "always has the potential to lead to 'violent' force." Ramon-Silva, 608 F.3d at 670 (quoting Johnson v. United States, 559 U.S. at 140 (emphasis omitted)). The Court, thus, concludes that using the Ramon-Silva reasoning does not change its or outcome, despite the different underlying crimes.

Moreover, the Tenth Circuit cited two aggravated battery cases in which the defendant physically contacted the victim with a deadly weapon to support its reasoning. See Ramon-Silva,

608 F.3d at 671 (citing United States v. Treto-Martinez, 421, F.3d 156, 1159-60 (10th Cir. 2005);

United States v. Dominguez, 479 F.3d 345, 349 (5th Cir. 2007)).  The Tenth Circuit noted that

> causing physical contact with a deadly weapon in a rude, insulting or angry manner, if not sufficient in itself to constitute actual use of physical force under § 2L1.2(b)(1)(A), could always lead to more substantial and violent contact, and thus it would always include as an element the threatened use of physical force.

Ramon-Silva, 608 F.3d at 671 (quoting United States v. Treto-Martinez, 421, F.3d at 1160).

Although the cases concern the defendants "actually touch[ing] the victim with a weapon," Tr.

6:2-3 (Clouthier), they support the Court's conclusion that the deprivation of civil rights by using,

attempting to use, or threatening use of a deadly weapon constitutes a crime of violence.  As the

Court will discuss later in its analysis, the word "use" denotes an active engagement of a weapon,

which communicates, at the very least, that "'more substantial and violent contact'" could result

from the interaction.  Ramon-Silva, 608 F.3d at 671 (quoting United States v. Treto-Martinez, 421,

F.3d at 1160).  Similarly, the cases that the Tenth Circuit cited in Ramon-Silva clarify that active

physical contact with a deadly weapon triggers the crime of violence application because

deploying the weapon could result in "'more substantial and violent contact.'"  Ramon-Silva, 608

F.3d at 671 (quoting United States v. Treto-Martinez, 421 F.3d at 1160).  The Court thus concludes

that Ramon-Silva was good law at the time of Rodella's conviction that assists the Court in its

determination whether the crime of violence should apply to Rodella's underlying crime.

## II.     JURISTS OF REASON WOULD NOT DISAGREE WITH THE COURT'S RESOLUTION OF RODELLA'S CONSITUTIONAL CLAIMS.

Reasonable jurists would not "'find the district court's assessment of the constitutional

claims debatable or wrong,'" United States v. Bedford, 628 F.3d 1232, 1234 (10th Cir.

2010)(quoting Slack v. McDaniel, 529 U.S. at 484), because "use" of a firearm renders an offense

a crime of violence under current law and under the law at the time of Rodella's sentencing, and

because Rodella "has failed to articulate how the district court's assessment of his constitutional claim is incorrect," United States v. Bedford, 628 F.3d at 1234.  Rodella first argues that the Supreme Court employed the word "use" when stating that the use of a firearm does not render an underlying offense a crime of violence, and the Supreme Court thus would disagree with the Court's conclusion that use of a firearm can render an offense a crime of violence.  See Tr. at 13:17-22 (Clouthier).  The Court examines United States v. Davis to determine whether its decision in Rodella's case is in conflict with the Supreme Court's case.

In United States v. Davis, the Supreme Court explained that, although Congress enacted 18 U.S.C. § 924(c) to prohibit the use of a firearm in connection with any felony, Congress narrowed 18 U.S.C. § 924(c) in 1984 to prohibit the use of a firearm in connection with a crime of violence.  United States v. Davis, 139 S. Ct. at 2331.[2]  The Supreme Court rejected the United States' argument that a case-specific reading of the residual clause would not reestablish the statute's original breadth, because "a jury wouldn't be allowed to find a felony to be a crime of violence *solely* because the defendant used a firearm, although it could consider the firearm as a 'factor.'" United States v. Davis, 139 S. Ct. at 2331 (emphasis in original).  In contrast to Rodella's contention that the Supreme Court was stating that use of a firearm does not transform an offense into a crime of violence, the Supreme Court was expressing its concern that use of a firearm would transform an offense into a crime of violence.  See 139 S. Ct. at 2331.  The Supreme Court rejected the United States' case-specific reading of the residual clause, in part, because use of a firearm, on its own, could make most offenses into a crime of violence, in contravention of Congressional

_____

[2]Although Rodella does not clarify to which section of the United States v. Davis opinion he refers, the Court believes that the opinion's page 2331 best supports his argument.

intent to limit the offenses that fall under § 924(c). See United States v. Davis, 139 S. Ct. at 2331. Because the Supreme Court's analysis was focused on a crime of violence under a case-specific reading of the residual clause, and not a categorical reading of the elements clause, and because the analysis is consistent with the Court's conclusion that use of a firearm can render an offense a crime of violence, no reasonable jurist would debate the Court's conclusion.

The Court further disagrees with Rodella's contention that "use or attempted use of a firearm" is more analogous to "possession of a firearm" rather than "threatening use of a firearm." Tr. at 7:2-7 (Clouthier). The Court concludes that the plain language, the jury instructions, and caselaw support its interpretation of use of a firearm as an active employment of a firearm and not as a passive possession. The Court begins with the statute. Because 18 U.S.C. § 242 does not define "use," the Court looks at the word's plain meaning. Merriam-Webster defines "use" as "to put into action or service: avail oneself of: EMPLOY." Merriam-Webster Dictionary, Use, https://www.merriam-webster.com/dictionary/use (last visited March 25, 2020)(capitalization in original). This definition clarifies that "use" means "action," and possessing a firearm in one's pocket or in a holster would not qualify as putting the firearms into action. Although most of the dictionaries that the Court has consulted similarly define "use" as an action, the Court has found a definition that more closely aligns with Rodella's proffered meaning. One dictionary defines use as "take, hold, or deploy (something) as a means of accomplishing a purpose or achieving a result; employ." Lexico Dictionary, Use, https://www.lexico.com/en/definition/use ("Lexico's Definition of Use"). Although the word "hold" implies possession, the Court looks at hold in the context of the entire definition: "hold . . . something as a means of accomplishing a purpose or achieving a result." Lexico's Definition of Use. Hold in this context, therefore, implies a future active employment of the object, as opposed to possession, which describes the object's present

- 11 -

ownership and is silent on any future use.  Compare with Merriam-Webster, "Possession," https://www.merriam-webster.com/dictionary/possession (last visited February 1, 2020).

The Tenth Circuit Jury Instructions support this interpretation.  First, the Tenth Circuit has a general instruction on actual or constructive possession, in which it explains that a person is in possession of an object if the person "knows of its presence and has the power and intent to control it."  Actual or Constructive Possession, Tenth Circuit Pattern Jury Instructions Criminal § 1.31 at 47 (Feb. 2018).  Again, possession describes the object's status and does not imply that the possessor intends to do anything with the objection beyond controlling it.  Moreover, the Tenth Circuit has a pattern jury instruction for "using/carrying a firearm during commission of a drug trafficking crime or crime of violence 18 U.S.C. 924(c)(1)," Using/Carrying a Firearm During Commission of a Drug Trafficking Crime or Crime of Violence, 18 U.S.C. § 924(c)(1), Tenth Circuit Pattern Jury Instructions Criminal § 2.45 (Feb. 2018)("Use/Carry Instruction"), and a pattern jury instruction for "possession of a firearm in furtherance of a drug trafficking crime or crime of violence  18 U.S.C. § 924(c)(1)," Possession of a Firearm in Furtherance of  a Drug Trafficking Crime or Crime of Violence/ 18 U.S.C. § 924(c)(1), Tenth Circuit Pattern Jury Instructions Criminal § 2.45.1 (Feb. 2018)("Possession Instruction").  The Use/Carry Instruction states that a "defendant knowingly 'uses' a firearm when it is (1) readily accessible and (2) is actively employed during and in relation to the underlying crime."  Use/Carry Instruction.  The instruction clarifies that the Tenth Circuit defines use as an active employment, and not as a passive possession, of a firearm.  In contrast, the Tenth Circuit jury instructions' definition of possession of a firearm omits any mention of action and notes only that the qualifier "'in furtherance of' means for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of the underlying offense."  Possession Instruction.  Therefore, although possession in

furtherance of a crime of violence requires more than "the firearm's presence [to] be coincidental or entirely unrelated to the underlying crime," possession does not require action. Possession Instruction.

The Court notes that it used the Use/Carry Instruction in its final jury instructions. See Rodella v. United States, No. CIV 19-0275 JB/CG, 2020 WL 406389, at *3 (D.N.M. Jan. 23, 2020)(Browning, J.)(citing Court's Final Jury Instructions (with citations) at 25-26, filed September 26, 2014 (Doc. 129)). Although this definition of "use" was in the 18 U.S.C. 924(c) instructions, not the 18 U.S.C. § 242 instructions, the Court agrees with the United States that the jury would have read the instructions as a whole and, if they did not give "use" its plain meaning, they would have used the definition from another part of the instructions. Moreover, even though the 18 U.S.C. § 242 Jury Instructions does not define "use," the Court gave context for "use" in the 18 U.S.C. § 242 instruction -- the instruction states that the jury must find that "Mr. Rodella's *acts* include the use, attempted use, or threatened use of a dangerous weapon." Final Jury Instructions (with Citations) at 13 (emphasis added). The Court, thus, ensured that the jury viewed the firearm use as part of Rodella's actions, and not as a passive happenstance. Because the Jury Instructions in that case, along with the plain language of 18 U.S.C. § 242, and the Supreme Court caselaw, clarify that "use of a firearm" is an action that can render an offense a crime of violence under current law and is not a phrase that could be construed as vague at the time of sentencing, the Court concludes that a reasonable jurist would not debate Rodella's constitutional claim under this theory.

Moreover, the Court disagrees that use of a dangerous weapon is more akin to possession of a dangerous weapon than threatening to use a dangerous weapon. The Use/Carrying Instructions clarify that a defendant who uses a firearm in furtherance of a crime of violence

- 13 -

violates 18 U.S.C. § 924(c)(1).  See Use/Carry Instructions ("The phrase 'during and in relation to' means that the firearm played an integral part in the underlying crime, that it had a role in, facilitated (i.e., made easier), or had the potential to facilitating the underlying crime.").  The Court concludes that use of a firearm in furtherance of a deprivation of civil rights is an inherently threatening use of a dangerous weapon.

## III. THE COURT GRANTS THE CERTIFICATE OF APPEALABILITY, BECAUSE OF THE COURTS OF APPEALS' SPLIT REGARDING A § 2255 PETITIONER'S BURDEN OF PROOF.

The Court relies on two Tenth Circuit decisions in which the Tenth Circuit concludes that a Courts of Appeals split per se demonstrates that a reasonable jurist could debate the district court's decision.   See United States v. Crooks, 769 F. App'x 569, 572   (10th Cir. 2019)(unpublished)[3](stating that another Court of Appeal's opinion "demonstrates that reasonable jurist could debate the merits of the procedural ruling that barred relief in this case")(citing Lambright v. Stewart, 220 F. 3d 1022, 1027-28 (9th Cir. 2000)("[T]he fact that another circuit opposes our view satisfies the standard for obtaining a COA.")(alterations in United States v.

---

[3]United States v. Crooks is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Crooks has persuasive value with respect to a material issue and will assist the Court in its disposition of this Memorandum Opinion and Order.

Crooks); Wilson v. Sec'y Pa. Dep't of Corr., 782 F.3d 110, 115 (3d Cir. 2015)(stating that a contrary United States Court of Appeals for the Sixth Circuit decision demonstrates that jurists of reason would debate the issue)). The Court faithfully will follow the Tenth Circuit's decisions. Thus, because there is a Courts of Appeals split on a petitioner's burden of proof when arguing that the sentencing court relied upon an unconstitutional provision during sentencing, the Court will grant a certificate of appealability.

Although the Court will follow the Tenth Circuit's lead, the Court disagrees with the Tenth Circuit's decision to treat a Court of Appeals split as sufficient grounds to warrant a certificate of appealability. When deciding whether to issue a certificate of appealability, the Tenth Circuit must determine whether reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court interprets "the district court's assessment" to mean the district court's application of the law, and not the law itself. Hancock v. Trammell, 798 F.3d 1002, 1026 (10th Cir. 2015)("In our view, no reasonable jurist could question the reasonableness of the district court's conclusion."). If the Supreme Court instead had inquired into "the outcome of the constitutional claims," rather than the "assessment," the Court would agree with the Tenth Circuit that the law, and anything else that leads to the case's outcome, would be included. The district court's "assessment" consists of the evaluation process, however, and does not include the law; a Court of Appeals split on the law, thus, should not mean that the district court's assessment is debatable.

The Court acknowledges that Rodella would have a much stronger case if the Court applies the might-have-relied-on standard. The Court, however, must apply the preponderance-of-the-evidence standard. Even if the Court had discretion to select its preferred standard, the Court would have applied the preponderance-of-the-evidence standard, because it is

a better standard --  the preponderance-of-evidence standard respects the presumption of finality of criminal convictions and is more efficient and just as equitable as the might-have-relied-on standard.

The Tenth Circuit, like most Courts of Appeals, has established that a petitioner has the burden to demonstrate that he or she is entitled to relief in a 28 U.S.C. § 2255 motion.  See In re Moore, 830 F.3d 1268, 1273 (11th Cir. 2016)(collecting cases from the United States Courts of Appeals for the First, Second, Fourth, Fifth, Eighth, and Seventh Circuits).  The Tenth Circuit, furthermore, has "required movants to show something more" than some other courts to bring a Johnson v. United States claim. United States v. Taylor, 873 F.3d 476, 480 (5th Cir. 2017)(citing United State v. Snyder, 871 F.3d 1122, 1129 (10th Cir. 2017)).  The preponderance-of-the-evidence standard requires the petitioner to demonstrate that he or she is entitled to relief in a 28 U.S.C. § 2255 proceeding.  The preponderance-of-the-evidence standard for Davis claims, therefore, is consistent with the petitioner's burden of proof in Tenth Circuit Johnson v. United States cases and in other 28 U.S.C. § 2255 cases in other courts.

Moreover, this standard accords with the presumption of finality afforded to convictions and subjects a collateral attack to "greater procedural hurdles" than those hurdles to which an appeal is subject.  Ryan Baker, Dimott v. United States: Requiring Petitioners Prove That Sentence Enhancement More Likely Than Not Resulted from the Armed Career Criminal Act's Residual Clause, 52 Creighton L. Rev. 191, 197 (2019)(citing United States v. Frady, 456 F.2d 506, 508 (D.C. Cir. 1980))("Dimott Article").  The United States must carry its burden at trial for a conviction; it is up to the petitioner to carry that burden in the collateral attack process.  See Dimott Article at 209.  Permitting a petitioner to proceed under a might-have-relied-on standard forces the United States to carry the burden twice and "subverts the presumption of finality."  Dimott Article

at 193.  Preventing a burden shift during the collateral attack process is more efficient than

permitting the burden shift, and thus accords with

> one of the Supreme Court's chief concerns in Teague[v. Lane, 489 U.S. 288
> (1989)]: that the "costs imposed . . . by retroactive application of new rules of
> constitutional law on habeas corpus" would far outweigh the benefits of this
> application" if "it continually forces the [United States] to marshal resources in
> order to keep in prison defendants whose trials and appeals conformed to then-
> existing constitutional standards."

Dimott v. United States, 881 F.3d 232, 242 (1st Cir. 2018), cert. denied sub nom. Casey v. United

States, 138 S. Ct. 2678 (2018)(alterations added)(quoting Teague v. Lane, 489 U.S. at 310).

When justifying a decision to impose the might-have-relied-on standard, courts have

expressed concern that applying a preponderance-of-the-evidence standard would result in

inequities amongst prisoners, all of whom may have been sentenced under the residual clause, but

only half of whom may have anything on the record to suggest that reality.  See United States v.

Winston, 850 F. 3d 677, 682 (4th Cir. 2017)(stating that the preponderance-of-the-evidence burden

would "result in 'selective application' of the new rule of constitutional law announced in Johnson,

violating 'the principle of treating similarly situated defendants the same'")(quoting In re Chance,

831 F.3d 1335, 1341 (11th Cir. 2016)).  The Court disagrees that this standard would result in

inequities: "[p]recisely the opposite: it is imposing a uniform rule" and that "the burden is less

friendly to petitioners" "does not make it unequal."  Dimott v. United States, 881 F.3d at 242.

## IV.  THE UNITED STATES' RELIANCE ON CASES FROM 2016 WAS APPROPRIATE.

The Court concludes that the United States' reliance on cases that were decided after 2015

was appropriate, because the United States used those cases to counter Rodella's contention that

"use" is too vague under current law to render an offense a crime of violence.  See United States'

Answer to Amended Motion under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence

at 18, filed December 12, 2019 (Doc. 23)("Response")(citing United States v. Kendall 876 F.3d at 1266). The United States cites United States v. Kendall under its Response's subheading: "Stage Two: Any Error Is Harmless Because the Offense of Conviction Is a Crime of Violence Under Current Law." Response at 14 (capitalization in original). The United States uses United States v. Kendall for its argument that, if 18 U.S.C. § 242's second clause is comprised of two means instead of two elements, "both means require the element of use of threatened use of physical force," so Rodella's conviction under that clause would have been a crime of violence regardless. Response at 18. The Court notes that the United States did not say at the hearing or in its Response that it was using United States v. Kendall or United States v. Mitchell to support any argument about the law at the time of Rodella's sentencing. The Court, thus, concludes that the United States appropriately relied upon United States v. Kendall and United States v. Mitchell.

IT IS ORDERED that the Court will grant Rodella's Oral Motion for Certificate of Appealability and will issue a certificate of appealability.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Paul D. Mannick
Coppler & Mannick, P.C.
Santa Fe, New Mexico

--and--

Susan J. Clouthier
Clouthier Law, P.L.L.C.
The Woodlands, Texas

*Attorneys for the Petitioner*

John C. Anderson
  United States Attorney
Jeremy Pena
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Respondent*